Filed 1/9/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| DIGNITY HEALTH et al., | B288886 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC583522) |
| v. | |
| LOCAL INITIATIVE HEALTH CARE AUTHORITY OF LOS ANGELES COUNTY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles, Michael Johnson, Judge.  Affirmed.

Jones Day, James Poth and Erica L. Reilley for Plaintiffs and Appellants.

Daponde Simpson Rowe, Michael J. Daponde, Eunice C. Majam-Simpson, and David P. McDonough for Defendant and Respondent.

King & Spalding, Glenn Solomon, Daron Tooch, and Vinay Kohli for Miller Children's & Women's Hospital of Long Beach, Pomona Valley Hospital Medical Center, Valley Children's Hospital, NorthBay Medical Center, Long Beach Medical Center, Lucille Salter Packard Children's Hospital at Stanford, Stanford Health Care, Orange Coast Medical Center, El Camino Hospital, and Saddleback Medical Center as Amici Curiae on behalf of Plaintiffs and Appellants.

Hooper, Lundy & Bookman, Lloyd A. Bookman and Paul L. Garcia for California Hospital Association as Amicus Curiae on behalf of Plaintiffs and Appellants.

Xavier Becerra, Attorney General, Jennifer M. Kim, Gregory D. Brown, and Sarah M. Barnes, Deputy Attorneys General for California Department of Health Care Services as Amicus Curiae on behalf of Defendant and Respondent.

Fred J. Hiestand for California Association of Health Plans and Local Health Plans of California as Amici Curiae on behalf of Defendant and Respondent.

_____

Plaintiffs and appellants Dignity Health and Northridge Hospital Medical Center (Northridge Hospital; collectively, plaintiffs) appeal from a grant of summary judgment in favor of defendant and respondent Local Initiative Health Care Authority of Los Angeles County dba L.A. Care Health Plan (defendant). Defendant is a managed care health plan that provides health care coverage to low-income individuals under Medi-Cal, the state's Medicaid program. Northridge Hospital, which Dignity Health operates, is not within defendant's network of contracted providers. The question presented in this case is what amount defendant must compensate plaintiffs for poststabilization

2

services—medically necessary inpatient care following stabilization of an emergency—that defendant expressly or implicitly authorized Northridge Hospital to provide to patients enrolled with defendant.

Defendant contends, and the trial court found, state and federal law mandate that out-of-network poststabilization services under Medi-Cal be paid at state-set rates known as "All Patient Refined Diagnosis Related Group" or "APR-DRG" rates. Plaintiffs disagree, arguing that Welfare and Institutions Code[1] section 14105.28, subdivision (b)(1)(B) specifically exempts "managed care inpatient days" from services subject to the APR-DRG rates, and that Northridge Hospital's inpatient treatment of defendant's managed care enrollees constituted "managed care inpatient days." Plaintiffs further contend that federal law is silent as to any payment rate for out-of-network poststabilization services under Medicaid. Plaintiffs thus claim they are entitled to their full billed rates.

We conclude that the legislative history of section 14105.28, along with the statement of legislative intent within the statute itself, indicate that the Legislature intended the APR-DRG rates to apply to out-of-network inpatient poststabilization services under Medi-Cal. Consistent with the Legislature's intent, we thus interpret the phrase "managed care inpatient days" to refer to services provided pursuant to a managed care contract, that is, in-network services. Accordingly, we affirm the judgment. We do not decide whether federal law compels the same result.

---

[1] Undesignated statutory citations are to the Welfare and Institutions Code.

3

## PROCEDURAL BACKGROUND

Defendant is a publicly funded Medi-Cal managed care health plan established by the County of Los Angeles. For the time period at issue in this case, defendant did not have a written contract with plaintiff Northridge Hospital for the provision of inpatient services; thus, Northridge Hospital was "out-of-network," i.e., not part of defendant's network of healthcare providers. Plaintiff Dignity Health operates Northridge Hospital.

Plaintiffs filed an action against defendant alleging that defendant had expressly or implicitly authorized Northridge Hospital to provide inpatient poststabilization services to Medi-Cal beneficiaries enrolled with defendant.[2] Plaintiffs alleged defendant therefore was financially responsible for those services. Plaintiffs alleged defendant had not paid Northridge Hospital's full billed charges, however, instead paying the lower APR-DRG rates set by the state.

Based on defendant's alleged failure to pay the full billed charges, plaintiffs asserted causes of action for breach of implied contract, violation of Health and Safety Code section 1262.8, and declaratory relief. Plaintiffs also asserted a cause of action under Health and Safety Code section 1371.4, alleging defendant had failed to pay state-mandated rates for outpatient and emergency services provided by Northridge Hospital to patients enrolled with defendant.

Following discovery, plaintiffs moved for summary adjudication on their causes of action for breach of implied

---

[2] We summarize the allegations from plaintiffs' second amended complaint, the operative pleading for purposes of this appeal.

4

contract, violation of Health and Safety Code section 1262.8, and declaratory relief, seeking a ruling that defendant had a "duty" to pay plaintiffs' full billed rates for poststabilization services rather than the APR-DRG rates. Plaintiffs argued that section 14105.28 expressly excluded "managed care inpatient days" from the APR-DRG rates, and that Northridge Hospital's poststabilization care of defendant's managed care enrollees fell within that exclusion. Plaintiffs concluded that absent application of the APR-DRG rates, defendant had to pay them their full billed charges for these poststabilization services.

Defendant countered with its own motion for summary judgment. Defendant argued that federal law mandates that out-of-network hospitals accept state-set rates for poststabilization services under Medicaid, which in California are the APR-DRG rates. Defendant further argued that the Department of Health Care Services (DHCS), the state agency overseeing Medi-Cal, has interpreted section 14105.28 to apply the APR-DRG rates to out-of-network poststabilization services provided to managed care patients, and that the legislative history of the APR-DRG methodology supports DHCS's interpretation. Defendant also contended that Health and Safety Code sections 1262.8 and 1371.4 do not create private rights of action.

The trial court granted defendant's motion and denied plaintiffs' motion. The trial court concluded that the interplay of three federal regulations—42 C.F.R. part 422.113, 42 C.F.R. part 422.214, and 42 C.F.R. part 438.114—mandates that Medicaid managed care plans pay state-set rates, such as the APR-DRG rates, for out-of-network poststabilization services.

The trial court rejected plaintiffs' interpretation that the exclusion for "managed care inpatient days" in section 14105.28

5

applies to out-of-network services. The trial court found that DHCS's contrary interpretation that "managed care inpatient days" excludes only in-network services from the APR-DRG rates was "entitled to considerable weight." The trial court also found DHCS's interpretation "makes sense" because in-network services already were subject to contracted terms and thus there was no need to regulate them through the APR-DRG rates.

The trial court further agreed with defendant that Health and Safety Code sections 1262.8 and 1371.4 do not create private rights of action.[3]

The trial court entered judgment in favor of defendant. Plaintiffs timely appealed.

## OVERVIEW OF MEDI-CAL

### 1.    Medi-Cal

"Medi-Cal is California's program under the joint federal-state program known as Medicaid." (*Marquez v. State Dept. of Health Care Services* (2015) 240 Cal.App.4th 87, 93 (*Marquez*)).

"Medicaid provides federal financial assistance to participating states to support the provision of health care services to certain categories of low-income individuals and families, including the aged, blind, and disabled, as well as pregnant women and others." (*Marquez, supra*, 240 Cal.App.4th

---

[3] In this appeal, plaintiffs do not challenge the trial court's conclusion that there are no private rights of action under Health and Safety Code sections 1262.8 and 1371.4, other than to say in their reply brief that the trial court should reconsider that conclusion on remand should we hold the APR-DRG rates do not apply to out-of-network poststabilization services. In light of our ruling, we need not address this argument further.

at p. 93.)  State participation in Medicaid is voluntary, but if a state chooses to participate, it must comply with federal requirements and administer its Medicaid program through a plan approved by the federal Centers for Medicare and Medicaid Services (CMS).  (*Olszewski v. Scripps Health* (2003) 30 Cal.4th 798, 809 (*Olszewski*); *Marquez*, at pp. 93–94.)  DHCS is the state agency in charge of the Medi-Cal program.  (*Marquez*, at p. 94.)

"The Medi-Cal program does not directly provide services; instead, it reimburses participating health care plans and providers for covered services provided to Medi-Cal beneficiaries." (*Marquez*, *supra*, 240 Cal.App.4th at p. 94.)  The Medi-Cal program provides reimbursement using two systems:  fee-for-service and managed care.  (*Ibid.*, citing § 14016.5, subd. (b).)

Medi-Cal beneficiaries in the fee-for-service system may obtain services "from any provider that participates in Medi-Cal, is willing to treat the beneficiary, and is willing to accept reimbursement from DHCS at a set amount for the services provided." (*Marquez*, *supra*, 240 Cal.App.4th at p. 94.)  Under this system, the state reimburses health care providers directly for each covered service.  (*Ibid.*)

In the managed care system, "DHCS contracts with health maintenance organizations (HMOs) and other managed care plans [such as defendant] to provide health coverage to Medi-Cal beneficiaries, and the plans are paid a predetermined amount for each beneficiary per month, whether or not the beneficiary actually receives services.  (§§ 14204, 14301, subd. (a); see Cal. Code Regs., tit. 22, § 53800 et seq.)  The beneficiary then obtains medical services from a provider within the managed care plan's network." (*Marquez*, *supra*, 240 Cal.App.4th at p. 94.)

7

## 2. Emergency and poststabilization services under Medi-Cal

Under federal and state law, a hospital with an emergency department must treat a patient with an emergency medical condition regardless of the patient's insurance status or ability to pay.  (42 U.S.C. § 1395dd(b), (h); Health & Saf. Code, § 1371; *Children's Hospital Central California v. Blue Cross of California* (2014) 226 Cal.App.4th 1260, 1266 (*Children's Hospital*).)  If the patient is enrolled in a managed care plan, whether through the Medi-Cal program or otherwise, state law requires the plan to reimburse the hospital for the emergency services even if the hospital is not within the plan's network of providers.  (Health & Saf. Code, § 1371.4, subd. (b); *Children's Hospital*, at p. 1266.)  Federal law similarly requires Medicaid managed care plans to compensate out-of-network hospitals for emergency services provided to beneficiaries enrolled in the plans.  (42 U.S.C. § 1396u–2(b)(2)(A)(i).)[4]

Once the emergency condition is stabilized, any resulting medically necessary care provided thereafter is referred to as poststabilization care.  (Health & Saf. Code, § 1262.8, subd. (l)(3).)  Unlike emergency services, under state law a managed care plan is not automatically required to reimburse an out-of-network hospital for poststabilization services, and may instead require the out-of-network hospital to obtain the plan's prior authorization.  (Health & Saf. Code, § 1371.4, subd. (c); *Children's Hospital*, *supra*, 226 Cal.App.4th at p. 1266.)  If a

---

[4] We address the reimbursement rates required under state and federal law for these emergency services in our Discussion section, *post*.

managed care plan requires authorization but the out-of-network hospital fails to request it, the managed care plan has no obligation to reimburse the out-of-network hospital for providing poststabilization services to the managed care plan's enrollee. (See Health & Saf. Code, § 1262.8, subd. (f)(7).)

Should an out-of-network hospital request the authorization, however, the plan must within 30 minutes either authorize the poststabilization care or inform the out-of-network hospital that the plan will transfer the patient to another hospital. (Health & Saf. Code, § 1262.8, subd. (d)(1).) If the plan fails to notify the out-of-network hospital of its decision within 30 minutes, "the poststabilization care shall be deemed authorized," and the hospital is entitled to reimbursement from the plan. (*Id.*, subd. (d)(2).) Federal regulations establish similar requirements specific to Medicaid, providing that Medicaid managed care plans are financially responsible for poststabilization services they expressly have authorized, or have implicitly authorized by failing to respond to the hospital's authorization request within one hour.[5] (42 C.F.R. §§ 422.113(c)(2)(i), (iii), 438.114(e).)

---

[5] For purposes of this appeal we need not reconcile any differences between state and federal law regarding the circumstances under which a managed care plan is financially responsible for poststabilization services. What matters for our purposes is that under both regimes, a managed care plan is financially responsible for poststabilization care the plan either has expressly authorized or has implicitly authorized by not responding to the hospital's request for authorization within a set period of time.

### 3. APR-DRG rates

In 2010, the Legislature enacted section 14105.28, which states, "It is the intent of the Legislature to design a new Medi-Cal inpatient hospital reimbursement methodology based on diagnosis-related groups . . . ." (§ 14105.28, subd. (a).) Subdivision (b)(1)(A)(i) directs DHCS to "develop and implement" the new payment methodology, "subject to federal approval." Subdivision (b)(1)(B) states that "[t]he diagnosis-related group-based payments shall apply to all claims, except claims for psychiatric inpatient days, rehabilitation inpatient days, *managed care inpatient days*, and swing bed stays for long-term care services, provided, however, that psychiatric and rehabilitation inpatient days shall be excluded regardless of whether the stay was in a distinct-part unit. The department may exclude or include other claims and services as may be determined during the development of the payment methodology." (Italics added.)

## STANDARD OF REVIEW

The sole issue presented in this appeal is whether the trial court erred in concluding that the APR-DRG rates apply to out-of-network inpatient poststabilization services under Medi-Cal. This is a question of statutory and regulatory interpretation subject to our independent review. (*Hubbard v. California Coastal Com.* (2019) 38 Cal.App.5th 119, 135 (*Hubbard*).)

In interpreting a statute, "[t]he fundamental rule is to ascertain the Legislature's intent in order to give effect to the purpose of the law." (*Hubbard*, *supra*, 38 Cal.App.5th at p. 135.) "We first examine the words of the statute and try to give effect

10

to the usual, ordinary import of the language while not rendering any language surplusage.  These words must be construed in context and in light of the statute's obvious nature and purpose, and must be given a reasonable and commonsense interpretation that is consistent with the Legislature's apparent purpose and intention." (*Ibid.*)  "If the statutory language is clear, we should not change it to accomplish a purpose that does not appear on the face of the statute or from its legislative history." (*Id.* at p. 136.)  If, however, the language allows for more than one reasonable interpretation and therefore is ambiguous, "we turn to secondary rules of construction," including "the legislative history . . . and the wider historical circumstances of a statute's enactment." (*Ibid.*)  These rules of interpretation "are equally applicable to administrative regulations." (*Id.* at p. 135.)

## DISCUSSION

Plaintiffs claim that the poststabilization services they provided to defendant's enrollees constituted " 'managed care inpatient days,' " one of the categories of care exempt from the APR-DRG methodology under section 14105.28, subdivision (b)(1)(B).  Plaintiffs contend defendant therefore underpaid them for those services by compensating them under the APR-DRG methodology.  Plaintiffs reason they are entitled to their full billed rates for poststabilization services.

Defendant's primary argument to the contrary, which the trial court accepted, is that federal law mandates that Medicaid managed care plans pay for out-of-network poststabilization services at the same rate the state would pay for those services— that is, the fee-for-service rates.  Defendant argues that state law is consistent with federal law, but to the extent it is not, federal law preempts it.  Defendant also contends DHCS has interpreted

11

section 14105.28 to apply the APR-DRG rates to out-of-network poststabilization services, and DHCS's interpretation is entitled to deference.

Plaintiffs counter that federal law does not mandate a specific rate for out-of-network poststabilization services under Medicaid, and that DHCS's interpretation of section 14105.28 has changed over time and is not entitled to deference.

As we explain below, federal law played a role in the Legislature's development of state law in this area, and thus provides context to the legislative history of section 14105.28. That history, along with the text of section 14105.28 itself, compel the conclusion that, under state law, out-of-network poststabilization services provided to Medi-Cal managed care patients are subject to the APR-DRG rates. Accordingly, the trial court properly granted summary judgment in defendant's favor. Given our holding, we need not decide whether federal law independently compels the same result, nor do we reach the question of whether DHCS's interpretation of section 14105.28 is entitled to deference.

We begin with a discussion of federal law.

## I.    Federal Law Governing Poststabilization Services Under Medicaid

### A.    Federal Medicaid statutes

Medicaid is governed by title XIX of the Social Security Act, codified at 42 U.S.C. § 1396 et seq. (See *Olszewski*, *supra*, 30 Cal.4th at p. 809.) As we have discussed, title XIX requires Medicaid managed care plans to pay for emergency services provided to their enrollees by out-of-network hospitals. (42 U.S.C. § 1396u–2(b)(2)(A)(i).)

12

In 2006, Congress amended title XIX to specify the payment amounts to which out-of-network providers were entitled for emergency services, stating in relevant part, "Any provider of emergency services that does not have in effect a contract with a Medicaid managed care entity that establishes payment amounts for services furnished to a beneficiary enrolled in the entity's Medicaid managed care plan must accept as payment in full no more than the amounts (less any payments for indirect costs of medical education and direct costs of graduate medical education) that it could collect if the beneficiary received medical assistance under this subchapter other than through enrollment in such an entity." (42 U.S.C. § 1396u–2(b)(2)(D); Pub.L. No. 109–171, § 6085 (Feb. 8, 2006), 120 Stat. 121.) In other words, out-of-network providers are compensated for the emergency care of managed care patients at the same rate the providers would receive under a fee-for-service system.

As for poststabilization services, title XIX is silent except to state that Medicaid managed care organizations must "comply with guidelines established under section 1395w-22(d)(2) of this title (respecting coordination of post-stabilization care) in the same manner as such guidelines apply to Medicare+Choice plans offered under part C of subchapter XVIII." (42 U.S.C. § 1396u-2(b)(2)(A)(ii).) Title 42 United States Code section 1395w-22(d)(2), in turn, requires Medicare+Choice plans to comply with administrative guidelines "relating to promoting efficient and timely coordination of appropriate maintenance and post-stabilization care of an enrollee after the enrollee has been determined to be stable." In short, title XIX itself does not specify either when a Medicaid managed care plan must pay for

13

out-of-network poststabilization services or what rate the plan must pay.

## B.    Federal Medicaid regulations

CMS has promulgated one regulation pertaining to Medicaid poststabilization services, 42 C.F.R. part 438.114(e), which states, "Poststabilization care services are covered and paid for in accordance with provisions set forth at [42 C.F.R.] § 422.113(c) of this chapter.  In applying those provisions, reference to 'MA organization' and 'financially responsible' must be read as reference to the entities responsible for Medicaid payment, as specified in paragraph (b) of this section, and payment rules governed by Title XIX of the Act and the States."[6]

The second sentence of 42 C.F.R. part 438.114(e) addresses the fact that the cross-referenced regulation, 42 C.F.R. part 422.113, is a Medi*care* regulation,[7] and thus some substitution of terms is necessary to render it applicable in the Medi*caid* context.  Thus, for purposes of applying 42 C.F.R. part 422.113(c) to Medicaid, 42 C.F.R. part 438.114(e) instructs us to

---

[6] We quote the current version of 42 C.F.R. part 438.114(e), which CMS promulgated in 2016.  (81 Fed.Reg. 27877 (May 6, 2016).)  Among other things, the 2016 version added the phrase "and payment rules governed by Title XIX of the Act and the States."  (*Ibid.*)  Because we do not resolve this appeal under federal law, we need not address the significance, if any, of the differences between the current version of the regulation and the previous version.

[7] "Medicare is a federally funded medical insurance program for the elderly and disabled."  (*Fischer v. U.S.* (2000) 529 U.S. 667, 671.)

14

read "MA organization" (that is, Medicare Advantage[8] organization, see 42 C.F.R. § 422.1(a)(1)(v)) as referring to the "entit[y] responsible for Medicaid payment," such as a Medicaid managed care organization. (See 42 C.F.R. § 438.114(b)(1) [listing Medicaid managed care organizations (MCOs, see 42 C.F.R. § 438.2) among the "entities . . . responsible for coverage and payment of emergency services and poststabilization care services"].)

42 C.F.R. part 422.113(c) defines under what circumstances a Medicare Advantage organization is financially responsible for poststabilization services, whether provided "within or outside" the Medicare Advantage organization's network. (42 C.F.R. § 422.113(c)(2).) Among other circumstances, the Medicare Advantage organization "[i]s financially responsible (consistent with [42 C.F.R.] § 422.214) for post-stabilization care services obtained within or outside the MA organization" if those services are "pre-approved by a plan provider" or if "[t]he MA organization does not respond to a request for pre-approval within 1 hour." (42 C.F.R. § 422.113(c)(2)(i), (iii)(A).)[9] Per the substitution

---

[8] "[T]he Medicare Advantage program allows eligible Medicare beneficiaries the right to obtain the statutorily mandated benefits, as well as a variety of additional benefits, through privately run health plans." (*Roberts v. United Healthcare Services, Inc.* (2016) 2 Cal.App.5th 132, 137–138.)

[9] The requirement that a Medicare Advantage organization's financial responsibility be "consistent with [42 C.F.R.] § 422.214" appears only in 42 C.F.R. part 422.113(c)(2)(i), pertaining to financial responsibility for pre-approved poststabilization care. In contrast, 42 C.F.R. part 422.113(c)(2)(ii) and (iii), which under certain circumstances impose financial responsibility for poststabilization care that is

15

guidelines of 42 C.F.R. part 438.114(e), the above rules apply equally to Medicaid managed care organizations.

Although 42 C.F.R. part 422.113 defines when a Medicare Advantage organization is financially responsible for poststabilization services, it does not address the amounts the Medicare Advantage organization must pay for those services. However, it cross-references another Medicare regulation, 42 C.F.R. part 422.214, which does.

42 C.F.R. part 422.214(b) states, in relevant part, that "[a]ny provider of services . . . that does not have in effect a contract establishing payment amounts for services furnished to a beneficiary enrolled in an MA coordinated care plan, an MSA plan, or an MA private fee-for-service plan must accept, as payment in full, the amounts . . . that it could collect if the beneficiary were enrolled in original Medicare."[10]  "Original Medicare" is defined elsewhere as "health insurance available under Medicare Part A and Part B through the traditional fee-for service payment system."  (42 C.F.R. § 422.2.)

The parties disagree as to the interpretation of these federal regulations.  Defendant argues that because 42 C.F.R.

_not_ pre-approved (such as when the Medicare Advantage organization fails to respond to a request for pre-approval within one hour), do not cross-reference 42 C.F.R. part 422.214.  We assume for purposes of this appeal, however, that a Medicare Advantage organization's financial responsibility under 42 C.F.R. part 422.113(c)(2)(ii) and (iii) also must be consistent with 42 C.F.R. part 422.214.

[10]  42 C.F.R. part 422.214(b) applies to "section 1861(u) providers of service," which includes hospitals.  (See section 1861(u) of the Social Security Act, codified at 42 U.S.C. § 1395x(u).)

16

part 438.114(e) expressly incorporates 42 C.F.R. part 422.113(c), which in turn cross-references 42 C.F.R. part 422.214, then by extension the Medicare payment rules in 42 C.F.R. part 422.214 apply in the Medicaid context as well. Accordingly, defendant contends, out-of-network poststabilization services to Medicaid managed care patients are paid at the Medicaid fee-for-service rate, which defendant asserts is the Medicaid equivalent of "original Medicare." The trial court agreed with this argument, concluding that "these federal regulations state that where post-stabilization services are provided by a non-contract/out-of-network provider . . . , the services are to be compensated at the state's Medicaid rates . . . ."

Plaintiffs contend that 42 C.F.R. part 438.114(e)'s incorporation of one Medicare regulation, 42 C.F.R. part 422.113(c), provides no basis to incorporate an additional Medicare regulation, 42 C.F.R. part 422.214, particularly when 42 C.F.R. part 422.214 refers to payment under "original Medicare" and thus has no application in the Medicaid context without implicitly rewriting the regulation.[11] Plaintiffs instead direct us to 42 C.F.R. part 438.114(e)'s reference to "payment rules governed by Title XIX of the Act and the States." Plaintiffs argue that because Title XIX is silent as to payment rates for out-

[11] Comments by CMS in the Federal Register indicate that some construed 42 C.F.R. part 438.114(e) as literally requiring payment for out-of-network poststabilization services under Medicaid at Medi*care* rates. CMS clarified this was not the case, stating that 42 C.F.R. part 438.114(e) was "only intended to require coverage of post-stabilization care services in accordance with the provisions at [42 C.F.R.] § 422.113(c) of this chapter but not to mandate a payment rate using Medicare standards." (81 Fed.Reg. 27749 (May 6, 2016).)

17

of-network poststabilization services, 42 C.F.R. part 438.114(e) necessarily leaves it to the states to determine the rates at which those services should be paid. ~(AOB 48-49)~

We need not resolve the parties' arguments under federal law, because we conclude below that state law requires that poststabilization care by out-of-network providers under Medi-Cal be reimbursed at the APR-DRG rates. We turn now to that discussion.

## II. Out-Of-Network Poststabilization Care Does Not Constitute "Managed Care Inpatient Days"

### A. The term "managed care inpatient days" is ambiguous

In interpreting state law, we begin as we must with the language of the statute. (*Hubbard*, *supra*, 38 Cal.App.5th at p. 135.) "Managed care inpatient days" is not defined in section 14105.28 or elsewhere in the Welfare and Institutions Code.

Plaintiffs claim the term is unambiguous on its face. They note that Medi-Cal is subject to two payment systems, fee-for-service and managed care. Plaintiffs argue that in specifically exempting "managed care inpatient days" from the APR-DRG methodology, the Legislature thus indicated that the APR-DRG methodology was limited to fee-for-service inpatient days. In other words, plaintiffs' position is that if a managed care plan is financially responsible for inpatient services, whether in-network or out-of-network, those services constitute "managed care inpatient days" exempt from the APR-DRG rates.

The trial court interpreted the term "managed care inpatient days" differently, concluding it referred to care

18

pursuant to a contract between a managed care plan and an in-network provider. The trial court said, "[W]here services are contracted for, there is no need to apply the APR-DRG rates, and it is logical for § 14105.28(b)(1)(B) to exclude contract/in-network providers from the payment scheme." DHCS in its amicus brief similarly argues that " '[m]anaged care inpatient days' refers to services provided by hospitals that are part of a managed care plan, i.e. in-network hospitals."

Plaintiffs' interpretation and the trial court's and DHCS's alternative construction of the term "managed care inpatient days" are reasonable under the term's plain language, and we do not agree with plaintiffs that the term is unambiguous. (See *Hubbard*, *supra*, 38 Cal.App.5th at p. 136 [statute susceptible to "more than one reasonable interpretation . . . is ambiguous"].) As set forth below, when the term is read in the context of the legislative history of section 14105.28 and the previous statute regulating payments for out-of-network poststabilization services, as well as the statement of legislative intent in section 14105.28 itself, we conclude the trial court's and DHCS's interpretation is the correct one.[12]

## B. Legislative history

As best as we can determine, prior to September 2008, California law did not set rates for out-of-network

---

[12] The parties argue extensively as to whether we should defer to DHCS's interpretation as the agency in charge of Medi–Cal. To be clear, we reach our holding through our own analysis of the statutory language and legislative history and need not decide whether DHCS's interpretation is entitled to deference.

poststabilization care provided to Medi-Cal managed care patients. According to the one case we have found on the subject, payment for these services instead was determined under principles of quantum meruit. (*Children's Hospital*, *supra*, 226 Cal.App.4th at p. 1274.) *Children's Hospital* concerned out-of-network poststabilization services provided between July 31, 2007 and June 1, 2008. (*Id.* at p. 1266.) The court held that the hospital was entitled to " 'the reasonable and customary value' " of its poststabilization services pursuant to California Code of Regulations, title 28, section 1300.71, subdivision (a)(3)(B), a claims settlement regulation applying to medical services provided to enrollees in managed care plans in general, both Medi-Cal and otherwise.[13] (*Children's Hospital*, at p. 1271.) The court further held that the "reasonable and customary value" standard "embodies the concept of quantum meruit," and that the agency adopting the regulation, the Department of Managed Health Care, intended that "value disputes be resolved by the courts." (*Id.* at pp. 1273–1274.)

This changed in 2008, when the Legislature enacted Welfare and Institutions Code former section 14091.3, effective

---

[13] *Children's Hospital* acknowledged that federal law required the managed care plan to pay for out-of-network emergency services at the Medi–Cal fee-for-service rate (*Children's Hospital*, *supra*, 226 Cal.App.4th at p. 1266), but did not cite 42 C.F.R. part 438.114(e) or address whether federal law governed payment amounts for out-of-network poststabilization services. "[C]ases are not authority for issues not raised or decided." (*Mintz v. Blue Cross of California* (2009) 172 Cal.App.4th 1594, 1607.) We therefore draw no inference from *Children's Hospital*'s silence as to the applicability of federal law.

20

September 30 of that year.  (Stats. 2008, ch. 758, § 42.)  Former section 14091.3, subdivision (c) defined the payment amounts a Medi-Cal managed care plan must pay for certain out-of-network services, including emergency and poststabilization services.[14] The Legislature enacted the statute in part to comply with Congress's amendment to the Social Security Act limiting payment of Medicaid out-of-network emergency services to the fee-for-service rate.  (See Assem. Budget Com., Bill Analysis, Concurrence in Senate Amendments (2007–2008 Reg. Sess.), as amended Sep. 15, 2008, par. 7 ["This provision is intended to comply with federal law limits on emergency care charges to Medicaid managed care plans"].)

Former section 14091.3 required plans to pay for out-of-network emergency inpatient services at an average per diem contract rate pursuant to former section 14166.245, with certain adjustments.  (Former § 14091.3, subd. (c)(2).)  The statute required plans to pay for out-of-network poststabilization services "consistent with" 42 C.F.R. part 438.114(e), the federal Medicaid regulation governing poststabilization care.[15]  (Former § 14091.3, subd. (c)(3).)

---

[14]  Former section 14091.3, subdivision (c), stated, "Any hospital that does not have in effect a contract with a Medi–Cal managed care health plan . . . that establishes payment amounts for services furnished to a beneficiary enrolled in that plan shall accept as payment in full, from all these plans, the following amounts . . . ."

[15]  Former section 14091.3, subdivision (c)(3) read in full, "For poststabilization services following an emergency admission, payment amounts shall be consistent with subdivision (e) of Section 438.114 of Title 42 of the Code of Federal Regulations. This paragraph shall only be implemented to the extent that

21

In explaining this latter provision governing poststabilization care, an Assembly Budget Committee analysis issued shortly before the statute's enactment stated that payment for out-of-network poststabilization services was "subject to the equivalent of the payment that a provider would receive for the same service provided to a fee-for-service Medi-Cal enrollee." (Assem. Budget Com., Bill Analysis, Concurrence in Senate Amendments (2007–2008 Reg. Sess.), as amended Sep. 15, 2008, par. 7.) Thus, our Legislature interpreted federal law as defendant does, equating payment "consistent with" 42 C.F.R. part 438.114(e) with payment at the fee-for-service rate. Accordingly, from 2008 to 2012, DHCS annually issued "All Plan Letters" setting specific payment amounts for out-of-network poststabilization services based on fee-for-service rates calculated under former section 14166.245.[16] (See Cal. Dept. of Health Care Services, MMCD All Plan Letters

---

contract amendment language providing for these payments is approved by CMS. For purposes of this paragraph, this payment amount shall apply to all hospitals, including hospitals that contract with the department under the Medi–Cal Selective Provider Contracting Program pursuant to Article 2.6 (commencing with Section 14081)."

[16] Although the rates for emergency and poststabilization services were calculated according to former section 14166.245, they were not identical because the rates for emergency services did not take into account specified exemptions that applied to poststabilization services. (Cal. Dept. of Health Care Services, MMCD All Plan Letter 08-010, Nov. 10, 2008).)

08–010, Nov. 10, 2008; 09–013, June 29, 2009; 10–008, July 6, 2010; 11–017, July 18, 2011; 12–004, July 13, 2012.)[17]

Former section 14091.3 also contained a sunset provision repealing itself as of January 1, 2011 unless a statute enacted before the sunset date deleted or extended that date. (Former § 14091.3, subd. (f).) The Legislature extended the sunset date in 2010 and 2011. (Stats. 2010, ch. 717, § 147; Stats. 2011, ch. 3, § 92.)

The Legislature last amended former section 14091.3 in 2012, in anticipation of the implementation of the APR-DRG rates pursuant to section 14105.28. (Stats. 2012, ch. 23, § 81.) The Legislature added subdivision (c)(2) to former section 14091.3 stating that "[t]he rates . . . for emergency inpatient services and poststabilization services [listed in former section 14091.3] shall remain in effect only until [DHCS] implements the payment methodology based on diagnosis-related groups pursuant to Section 14105.28." A new subdivision (c)(3) further stated that, "[u]pon implementation of" the APR-DRG methodology, "any [out-of-network] hospital . . . shall accept as payment in full for inpatient hospital services, including both emergency inpatient services and poststabilization services related to an emergency medical condition, the payment amount established pursuant to the methodology developed under Section 14105.28."

The Legislature also amended former section 14091.3's sunset provision, now labeled subdivision (g), to state that section 14091.3 "shall become inoperative on July 1, 2013, and, as

---

[17] We take judicial notice of the All Plan Letters cited herein. (Evid. Code, § 452.)

of January 1, 2014, is repealed," absent enactment of a statute deleting or extending those dates. Although neither the amended former section 14091.3 nor its legislative history indicates why those specific sunset dates were chosen, the parties do not dispute that DHCS implemented the APR-DRG methodology "on or about July 1, 2013." (Cal. Dept. of Health Care Services, MMCD All Plan Letter 13-004, Feb. 12, 2013.) The Legislature took no further action regarding former section 14091.3, which under its own terms became inoperative on July 1, 2013, and repealed on January 1, 2014.

## C. Analysis

The 2012 amendments to former section 14091.3 make clear the Legislature's intent to apply the APR-DRG rates to out-of-network inpatient poststabilization services in place of the rates implemented under former section 14091.3. The Legislature expressly so stated, and amended former section 14091.3 to become inoperative on the same date DHCS implemented the APR-DRG rates. We must interpret section 14105.28 "consistent with the Legislature's apparent purpose and intention." (*Hubbard*, *supra*, 38 Cal.App.5th at p. 135.) Thus, we conclude, as did the trial court, that section 14105.28's exclusion of "managed care inpatient days" from the APR-DRG rates excludes inpatient poststabilization care provided under a managed care contract, i.e., in-network care. In sum, out-of-network inpatient poststabilization care is subject to the APR-DRG rates.

Plaintiffs urge us to draw a different conclusion from the legislative history. They argue that the Legislature, by enacting former section 14091.3, demonstrated that the Legislature knew how expressly to specify payment rates for out-of-network

services if the Legislature so chose, yet that express language is absent from section 14105.28. Plaintiffs quote other sections of the Welfare and Institutions, Health and Safety, and Insurance Codes expressly distinguishing between in-network and out-of-network services as well. Plaintiffs also contend that by permitting former section 14091.3 to sunset, the Legislature chose to abandon the express scheme outlined in that statute, and that we should not read into section 14105.28 the express language from the now-repealed section 14091.3.

We do not deny that resolving the question presented in this appeal would be more straightforward had the Legislature not allowed section 14091.3 to sunset or had it stated specifically in section 14105.28 or elsewhere whether the APR-DRG rates applied to out-of-network managed care inpatient poststabilization services. To accept plaintiffs' interpretation of the legislative history, however, would require us to conclude that the Legislature, having set specific payment rates for out-of-network poststabilization services beginning in 2008, and having stated its intention to continue setting those rates under the new APR-DRG methodology, suddenly reversed course completely, not through any affirmative act but merely by allowing former section 14091.3 to sunset on its own terms.

Such a conclusion is unreasonable, particularly in light of the fact that the amended sunset date for former section 14091.3 coincided with the implementation of the APR-DRG rates. The reasonable conclusion is that the sunset provision worked as intended, repealing former section 14091.3 when implementation of the APR-DRG rates rendered the statute no longer necessary.

Our interpretation is consistent with the statement of legislative intent in section 14105.28 itself. Subdivision (a) lists

25

ten goals the Legislature hoped to "more effectively ensure[ ]" through the APR-DRG methodology, including "[i]mprovement of fairness so that different hospitals receive similar payment for similar care and payments to hospitals are adjusted for significant cost factors that are outside the hospital's control"; "[e]ncouragement of administrative efficiency and minimizing administrative burdens on hospitals and the Medi-Cal program"; and "[s]implification of the process for determining and making payments to the hospitals."  (§ 14105.28, subd. (a)(4), (5), (7).)  These goals could not be achieved if, as plaintiffs argue, section 14105.28 does not apply the APR-DRG rates to out-of-network poststabilization services and hospitals may instead charge whatever rates they choose.

We reject plaintiffs' contention that our interpretation " 'read[s] into [section 14105.28] language it does not contain or elements that do not appear on its face.' "  Specifically, plaintiffs claim that to interpret section 14105.28 as we have requires inserting the term " 'in-network' " before the term " 'managed care inpatient days.' "  As we have discussed, the term "managed care inpatient days" can be interpreted to refer to inpatient care provided pursuant to a managed care contract, which necessarily would exclude out-of-network care.  Our interpretation requires no addition or omission of terms or manipulation of the language beyond its reasonable meaning.  Further, our interpretation is consistent with the legislative history and intent of section 14105.28, while plaintiffs' interpretation is not.[18]

---

[18]  Plaintiffs observe that DHCS has taken the position that elective inpatient services provided by out-of-network hospitals, unlike emergency and poststabilization inpatient services, are not subject to the APR-DRG rates.  DHCS confirms

Plaintiffs argue that our interpretation of " 'managed care inpatient days' " to refer only to care provided according to a managed care contract renders that exclusion surplusage, because the contract clauses of the federal and state Constitutions already shield in-network rates from legislative interference. (See U.S. Const., art. I, § 10, cl. 1 ["No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ."]; Cal. Const., art. I, § 9 ["law impairing the obligation of contract may not be passed"]). Plaintiffs' argument in fact supports our interpretation: Assuming arguendo that laws regulating contracted rates would violate constitutional protections for contractual obligations, the Legislature logically would exempt contracted rates from section 14105.28 expressly to maintain the statute's constitutionality.

Plaintiffs argue that if out-of-network poststabilization services are subject to the APR-DRG rates, then a managed care

---

this position in its amicus brief. Plaintiffs argue DHCS's position regarding elective services is inconsistent with its interpretation of " 'managed care inpatient days' " as referring only to in-network services. Plaintiffs argue that if " 'managed care inpatient days' " refers only to in-network services, then all out-of-network services must be subject to the APR-DRG rates, including out-of-network elective services.

Our holding does not depend on deference to DHCS's interpretation of section 14105.28, and the only question before us is whether out-of-network inpatient poststabilization treatment under Medi-Cal is subject to the APR-DRG rates. We need not decide whether DHCS's interpretation is internally consistent, or what reimbursement amounts would be required under Medi–Cal for other categories of medical services delivered by out-of-network providers.

27

plan would never exercise its option under Health and Safety Code section 1262.8 to transfer the patient to an in-network hospital rather than authorize the out-of-network hospital to provide the care. Plaintiffs argue this would render that statutory provision superfluous, which could not have been the Legislature's intent. Plaintiffs' argument assumes that the APR-DRG rates are less than what the plan would pay to an in-network hospital for poststabilization care, and therefore a plan would have no reason to transfer the patient to an in-network provider and incur greater costs.

We reject this argument for three independent reasons. First, we question the assumption that if the APR-DRG rates apply there would be no purpose to an out-of-network hospital seeking authorization from a managed care plan. It is conceivable a plan might have a contracted rate with an in-network hospital below the APR-DRG rates for particular services, or that there might be other reasons besides cost for the plan to transfer the patient.

Second, former section 14091.3, which mandated that out-of-network poststabilization care be paid at the Medi-Cal fee-for-service rates, was enacted during the same legislative session as the current version of Health and Safety Code section 1262.8, and the two statutes coexisted for years. (See Stats. 2008, ch. 603, § 2; Stats. 2008, ch. 758, § 42.) Assuming arguendo that applying those state-set rates rendered meaningless the choice under Health and Safety Code section 1262.8 to transfer the patient, the Legislature approved of such an outcome.

Finally, plaintiffs' argument does not recognize that Health and Safety Code section 1262.8 is not specific to Medi-Cal, but applies to all "health care service plans" licensed under specified

28

provisions of the Health and Safety Code.  (Health & Saf. Code, §§ 1262.8, subd. (m)(1), 1345, subd. (f).)  Thus, the statute remains vital independent of any interpretation of section 14105.28.

Plaintiffs argue that if managed care plans are never obliged to pay more than the APR-DRG rates for out-of-network poststabilization care, they will have no financial incentive to contract with out-of-network hospitals, and instead "can simply compel those out-of-network hospitals to accept rates to which they never agreed."  Plaintiffs contend this would thwart federal and state law requiring managed care plans to "maintain an adequate network of contracted/in-network hospitals."

Defendant counters that plaintiffs' interpretation of section 14105.28 would allow out-of-network hospitals "to collect exorbitant and arbitrary amounts" for poststabilization services, thus "placing a potentially crippling burden on the Medi-Cal program."  Amici join in the policy debate as well.

Whatever the merits of these arguments, policy considerations are for the Legislature to address.  We cannot override the Legislature's intent, embodied in the language and legislative history of section 14105.28 and former section 14091.3, to apply the APR-DRG rates to out-of-network poststabilization services.

A group of hospitals[19] filed an amicus brief in support of plaintiffs arguing inter alia that a federal regulation, 42 C.F.R.

---

[19]  The hospitals are Miller Children's & Women's Hospital of Long Beach, Pomona Valley Hospital Medical Center, Valley Children's Hospital, NorthBay Medical Center, Long Beach Medical Center, Lucille Salter Packard Children's Hospital at

part 438.6(c), prohibits states from directing a managed care plan's expenditures, and therefore the Legislature and DHCS could not mandate that out-of-network poststabilization services be paid at the APR-DRG rates or any other rate. Plaintiffs do not argue this point on appeal. "An amicus curiae ordinarily must limit its argument to the issues raised by the parties on appeal, and a reviewing court need not address additional arguments raised by an amicus curiae." (*Bullock v. Philip Morris USA, Inc.* (2011) 198 Cal.App.4th 543, 572.) We therefore decline to address the applicability of 42 C.F.R. part 438.6(c) to this case. (*Bullock*, at p. 572.)

## DISPOSITION

The judgment is affirmed. Defendant is awarded its costs on appeal.

<u>CERTIFIED FOR PUBLICATION.</u>

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

WEINGART, J.*

---

Stanford, Stanford Health Care, Orange Coast Medical Center, El Camino Hospital, and Saddleback Medical Center.

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

30